UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GARY D. WORKMAN, | ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) Civil Action No. 19-cv-1252 (TSC) <br> ) |
| ANDREW SAUL, *Commissioner of Social Security* | ) <br> ) <br> ) |
| Defendant. | ) <br> ) <br> ) |

## MEMORANDUM OPINION

Plaintiff Gary Workman seeks reversal of a June 25, 2018, decision by an Administrative Law Judge ("ALJ") denying him both disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act. Pending before the court are two motions: Workman's motion for judgment of reversal and remand for payment of benefits, (ECF No. 12 ("Pl. Br.")), and Defendant's motion for remand to the Commissioner of Social Security for further evaluation pursuant to the fourth sentence of 42 U.S.C. § 405(g), (ECF No. 16 ("Def. Br.")). Workman also moves, in the alternative, for remand for a new hearing. Upon consideration of the record and the pleadings, and for the reasons stated below, with respect to Workman's application for supplemental security income benefits filed on December 27, 2013, the court will reverse and remand for award of benefits, and with respect to Workman's application for disability insurance benefits and supplemental security income benefits filed on December 20, 2007, the court will remand for further proceedings consistent with this opinion. The court will therefore GRANT in part and DENY in part Plaintiff's Motion for Judgment of Reversal, or in the Alternative, Remand with respect to reversal, and will GRANT in part

Plaintiff's motion with respect to remand. Accordingly, the court will GRANT in part and DENY in part Defendant's Motion for Remand.

## I.     BACKGROUND

Workman first applied for social security benefits over twelve years ago, on December 20, 2007 ("2007 Application"). (Administrative Record ("AR") 257–271.) That application, seeking Disability Insurance Benefits ("DIB") and Supplemental Security Income benefits ("SSI"), was denied. (*Id*. 160, 163, 169, 172.) Workman then exhausted his administrative remedies through multiple, and ultimately unsuccessful, rounds of rehearings and appeals within the Social Security Administration. (*Id.* 137–157, 41–60.) In the meantime, Workman filed a separate, subsequent application for SSI on December 27, 2013 ("2013 Application"). (*Id.* 881.) D.C.'s Department of Disability Services ("DDS") awarded benefits for that application on June 13, 2014. (*Id.*)

Workman timely filed suit in this court on March 18, 2014, seeking reversal of the final June 8, 2012, adverse ruling on his 2007 Application. He prevailed on one key issue, prompting remand. Memorandum Opinion & Order, *Workman v. Colvin*, No. 14-cv-438 (D.D.C. Sep. 1, 2016). The court accepted a U.S. Magistrate's report and recommendation finding the ALJ's evaluation of Workman's trigger fingers was unsupported by substantial evidence, since the ALJ did not address, nor give controlling weight to, the findings by two of Workman's treating physicians that Workman had abnormal functioning in his upper extremities and fingers. *Id.* at 6. The court therefore remanded the case for further factual development of the impact Workman's trigger fingers would have on any disability finding. *Id.* at 7. It denied the rest of Workman's motion for reversal, finding no further errors in the ALJ's decision. *Id.* at 8–9.

On remand, the Appeals Council vacated the final decision and remanded the case to an ALJ for further proceedings. (AR at 911–914.) In its remand order, the Appeals Council noted that Workman had filed the 2013 Application and that the Appeals Council was not "affirm[ing] nor reopen[ing] the determination, which continues to be binding." (*Id.* at 913.) The Appeals Council noted that the 2013 Application was subject to "reopening and revision if additional development indicates that the conditions for reopening are met." (*Id.* (citing 20 C.F.R. § 416.1487).)

On remand, the ALJ issued a decision denying benefits to Workman on his 2007 Application. (AR at 778–99.) In considering the five steps for determining disability, the ALJ found that as to Step 1, Workman had not engaged in substantial gainful activity except for during the first quarter of 2017. (*Id.* at 785; *see also* 20 C.F.R. § 404.1571.) At Step 2, the ALJ found that Workman suffers from severe impairments, including degenerative joint disease of the knees, trigger fingers, diabetes, and obesity. (AR at 785.) The ALJ concluded that Workman's severe impairments "significantly limit [Workman's] ability to perform basic work activities." (*Id.*) The ALJ further found that Workman's other impairments of hepatitis C, hypertension, depression, and substance abuse (in remission) are not severe because "the evidence does not show that these impairments more than minimally impact" Workman's "ability to perform basic work activities." (*Id.* at 785–86.) At Step 3, the ALJ determined that Workman's impairments did not meet or medically equal impairments in the regulations that would require a finding of disability. (*Id.* at 788–89 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).) The ALJ gave "little weight" to the opinions of Doctors Manning and King, Workman's treating physicians, regarding his trigger fingers. (AR at 793–94.) The ALJ further determined that Workman's residual functional capacity allowed him to perform light work,

3

except for certain non-exertional limitations, including frequently reaching and handling; occasionally climbing ramps or stairs; balancing, stooping, kneeling, crouching and crawling; and never climbing ladders, ropes or scaffolds. (*Id.* at 789.) At Step 4, the ALJ found Workman cannot perform his past relevant work as a furniture mover because it requires heavy exertion. (*Id.* at 794.) The ALJ further found that Workman had past relevant work as a cashier but could not decide whether he could perform such work again because the record was inconsistent regarding the actual job duties. (*Id.* at 795–96.) At Step 5, the ALJ determined there were a significant number of jobs in the national economy Workman could perform given his residual functional capacity. (*Id.* at 797.) The ALJ therefore concluded that Workman was not disabled as defined under the Act, through the date of the decision, June 25, 2018. (*Id.* at 798–99.)

In the same decision, the ALJ reopened Workman's 2013 Application, on the ground that this court had remanded the case and that the award of benefits had been obtained by "fraud or similar fault." (*Id.* at 782.) The ALJ noted that Workman "initially reported that he worked as a cashier at Safeway lifting up to 25 pounds," and that he later "characterized the work as mostly a cleaner and stocker lifting up to 100 pounds." (*Id.*) The ALJ then found that based on the first statement, Workman could do his past work, but based on the later statement, Workman could not. (*Id.*) Therefore, the ALJ determined, under the preponderance of the evidence standard, Workman "committed 'similar fault' that resulted in the DDS finding him disabled," and the ALJ reopened the 2013 Application, found that Workman was not disabled, and reversed the 2013 Application award of benefits. (*Id.* at 779, 782.)

On April 16, 2019, the Appeals Council denied Workman's request for review of the June 25, 2018 ALJ decision, rendering the decision final. (*Id.* at 766–72.) Workman again timely filed suit in this court seeking reversal of the ALJ's final decision, and a preliminary

4

injunction preventing the government from terminating his SSI benefits pending appeal. After a hearing before this court on May 30, 2019, the government agreed to "voluntarily forego ceasing the payment of Plaintiff's supplemental security income benefits until January 31, 2020," and Workman agreed to withdraw his motion for a preliminary injunction. (ECF No. 7.)

Workman then filed a motion for judgment of reversal or, in the alternative, remand. He argues that the ALJ erred by failing to comply with this court's order on Workman's earlier appeal and by reopening the 2013 Application. (Pl. Br. at 1.) The government then moved for remand to SSA, arguing that the record is not fully developed on the 2007 Application and that Workman was not informed of the "similar fault" basis for reopening the 2013 Application. (Def. Br. at 6, 11.) This court held a hearing on the motions on November 8, 2019.

## II. LEGAL STANDARD

To receive disability benefits, a claimant must prove that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The disability must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id*. § 423(d)(2)(A). "The claimant must support his claim of impairment with '[o]bjective medical evidence' that is 'established by medically acceptable clinical or laboratory diagnostic techniques.'" *Espinosa v. Colvin*, 953 F. Supp. 2d 25, 31 (D.D.C. 2013) (citing 42 U.S.C. § 423(d)(5)(A)).

5

In evaluating a disability claim, the Social Security Administration engages in a five-step inquiry: (1) Is the claimant engaged in substantial gainful work? (2) Does the claimant have a severe impairment? (3) Does the impairment equate to a listed disability in 20 C.F.R., Part 404, Subpart P, Appendix 1? (4) Is the claimant able to return to their relevant past work, despite suffering the impairment? (5) Can the claimant perform any other work that exists in significant numbers in the national economy? *Brown v. Bowen*, 794 F.2d 703, 705–06 (D.C. Cir. 1986). "Between the third and fourth step, the SSA uses the entire record to make a determination of the claimant's residual functional capacity . . . , which is 'the most [the claimant] can still do despite [the] limitations' caused by the impairment." *Espinosa*, 953 F. Supp. 2d at 31. If, during the fourth step, the claimant's residual functional capacity shows they can "return to their relevant past work," then the claimant is not disabled. *Id.* Similarly, if, during the fifth step, the claimant's residual functional capacity shows they can adapt to "other work that exists in the national economy," then the claimant is not disabled. *Id*. (citing 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1545(a)(5)(ii)). "During these first four steps, the claimant bears the burden of proof. At the fifth and final stage, the burden shifts to the Secretary to show that the individual, based upon his or her age, education, work experience, and residual functional capacity, is capable of performing gainful work." *Brown*, 794 F.2d at 706.

"In a disability proceeding, the ALJ 'has the power and the duty to investigate fully all matters in issue, and to develop the comprehensive record required for a fair determination of disability.'" *Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004) (internal quotations omitted). Consequently, a reviewing court will not overturn the findings of the Commissioner if they are "supported by substantial evidence and [are] not tainted by an error of law." *Smith v. Bowen*, 826 F.2d 1120, 1121 (D.C. Cir. 1987); *see also* 42 U.S.C. § 405(g). Substantial evidence

"is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Butler*, 353 F.3d at 999 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). A reviewing court in a substantial-evidence case must engage in "careful scrutiny of the entire record," *Brown*, 794 F.2d at 705 (internal citation omitted), but cannot "re-weigh the evidence and reach its own determination," *Maynor v. Heckler*, 597 F. Supp. 457, 460 (D.D.C. 1984).

### III. ANALYSIS

#### A. 2007 Application

In his 2014 suit, Workman argued that the ALJ's decision on his 2007 Application was unsupported by substantial evidence because the ALJ failed to give Workman's treating physicians' opinions appropriate controlling weight. This court agreed:

> The Administrative Record shows that Doctors King and Manning directly treated Plaintiff, and under our Circuit's treating physician rule, "[a] treating physician's report is 'binding on the fact-finder unless contradicted by substantial evidence.'" *Butler*, 353 F.3d at 1003 (citing *Williams v. Shalala*, 997 F.2d 1494, 1498 (D.C. Cir. 1993)). An ALJ who rejects a treating physician's opinion must explain his or her reason for doing so. *Id.* Here, the ALJ failed to give the treating physicians' reports the weight to which they were entitled with regard to Plaintiff's trigger fingers, and the court agrees with Judge Kay's finding that the ALJ's decision was not supported by substantial evidence.

Memorandum Opinion at 6, *Workman v. Colvin*, 14-cv-438.

On remand, the ALJ found that Workman was not disabled under the Social Security Act and denied his 2007 Application. Workman argues the ALJ erred by failing to comply with this court's 2016 order regarding the weight to give Workman's treating physicians' opinions. (Pl. Br. at 14–17.) The court agrees with Workman; on remand, the ALJ disregarded the court's order and again discounted the reports of Workman's treating physicians, giving both Dr.

7

Manning and Dr. King's assessment of Workman's trigger fingers "little weight." (AR at 793–94.)

Defendant essentially argues that it does not matter what weight the treating physicians' reports were given because the ALJ found that Workman's trigger fingers were a severe impairment and factored that finding into the residual functional capacity analysis. (Def. Br. at 12.) Defendant emphasizes that because the court did not order a finding of disability on remand, the ALJ's findings should be affirmed. (*Id.*) Defendant's arguments are unavailing. "Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review." *Sullivan v. Hudson*, 490 U.S. 877, 886 (1989). After refusing to give controlling weight to Workman's treating physicians' reports, the ALJ concluded that Workman could "frequently reach[] and handl[e]." (AR at 794.) But Dr. King specifically explained that Workman's trigger fingers prevent him from doing jobs requiring sustained handling, holding, fingering, or other fine manipulation. (AR at 714–15.) Therefore, the ALJ's assessment of Workman's residual functional capacity and limitations were affected by their failure to give controlling weight to Workman's treating physicians' reports. Moreover, at Step 5, the few occupations for which the ALJ found Workman capable all required frequent reaching and handling, and frequent or occasional fingering, tasks which Workman's treating physicians said he cannot perform. (AR at 798.)

Despite the ALJ's disregard of the court's directive, this court, given its limited role in review, cannot make the necessary findings of fact. Therefore, it must again remand the case for the ALJ to give the proper controlling weight to the treating physicians' reports, and, applying that standard, to make findings of fact.

8

Workman argues that the court should go further and reverse for award of benefits. (Pl. Br. at 19-20.) But, as this court previously held, the record does not clearly show that Workman is disabled. Memorandum Opinion at 6–7, *Workman v. Colvin*, 14-cv-438. The court is, however, concerned by the length of time Workman has been waiting for a lawful decision, as well as what appears to be the ALJ's willful disregard of this court's order. Indeed, the last three years of litigation have been pointless, as the court is essentially re-ordering the same relief today that it did over three years ago. Accordingly, the agency is ordered to expedite Workman's case on remand. And, contrary to Defendants' contention, the agency needs no additional facts from Workman in order to decide on his disability. The period of review for the 2007 Application ended December 27, 2013—the date Workman filed his 2013 Application. Soc. Sec. Admin., Hearings, Appeals and Litigation Law Manual, I-1-10-50(F) (2017) ("HALLEX"); *see also* (AR 913).

On remand, the Commissioner must account for Workman's treating physician's opinions and grant them controlling weight, as previously ordered by this court. The Commissioner must then make further factual findings regarding Workman's residual functional capacity, and whether and to what extent his ability to work is impacted by his trigger fingers.

### B. 2013 Application

On remand, with no directive to do so, the ALJ also re-opened Workman's 2013 Application and reversed the award of benefits. Neither of the bases described in the ALJ's decision support this course of action.

The ALJ first found that this court remanded the 2013 Application and therefore the agency had the authority to revisit the award of benefits. (AR 779.) The ALJ explained that "Magistrate Kay specifically acknowledged the existence [of] the DDS determination on the

9

subapp [the 2013 Application], but declined to recommend affirming or reversing it, and the district court, in concurring with Magistrate Kay's recommendation concluded that, 'based on the record before it, the ALJ could still find that substantial evidence does not support a finding of disability.'" (*Id.*) The ALJ further explained that, in the Appeals Council's remand order to the ALJ, it did not affirm or reopen the determination on the 2013 Application. (*Id.*) Therefore, the ALJ concluded, "[i]t is thus clear that the DDS determination on the subapp is subject to my review." (*Id.*) The ALJ went on to note that the Appeals Council's remand order was "somewhat ambiguous" as to whether the DDS's determination on the 2013 Application was binding. (*Id.* at 780.) The ALJ decided, however, that the Appeals Council was "performing [the] ministerial task of remanding the case pursuant to the court's decision" and, therefore, it was "clear" that "the DDS determination on the subapp is fully subject to my review since it has not been affirmed by the court, which it could have done." (*Id.*)

The ALJ's analysis and conclusion was based on an incorrect reading of the record. The court declines to speculate on whether that misreading was inadvertent or deliberate, but is nonetheless concerned about the ALJ's reasoning. No action was ever filed in this court regarding the final decision on Workman's 2013 Application, and all references to the 2013 Application in this court's opinion and Magistrate Judge Kay's Report and Recommendation were in the context of the facts and procedural history of Workman's applications. Indeed, the administrative record on the 2013 Application was not before this court during its review of the 2007 Application. Because the court was never asked to review the 2013 Application, it could not have, and did not, remand the decision on that application. *See Rivera v. Astrue*, No. 07-cv-1912, 2008 WL 3285850, at *18 (D.N.J. Aug. 8, 2008).

10

The ALJ's second basis for reopening the 2013 Application was that Workman committed "similar fault" in obtaining the decision from DDS because of discrepancies in his description of past work at a grocery store. (AR at 782.) Under 20 C.F.R. § 416.1488, a decision can be reopened at any time if the result was obtained by "fraud or similar fault." 20 C.F.R. § 416.1488(c).[1] Fraud requires intent to defraud while "similar fault occurs when a person . . . knowingly makes an incorrect or incomplete statement that is material to the determination or decision or knowingly conceals information that is material to the determination or decision." HALLEX I-1-3-15(b)(2).

The ALJ found that Workman committed similar fault because he "initially reported that he worked as a cashier at Safeway lifting up to 25 pounds, but subsequently characterized the work as mostly a cleaner and stocker lifting up to 100 pounds. Based on this discrepancy, the ALJ in the first hearing decision dated June 11, 2010, found that the claimant could do his past work as a cashier, but the DDS's determination on the subapp found the claimant could not do his past relevant work." (AR at 782.) Therefore, the ALJ decided that, under the preponderance of the evidence standard, Workman "committed 'similar fault' that resulted in the DDS finding him disabled" and reopened the 2013 Application. (*Id.*) After reopening the application, the ALJ further found that Workman was not entitled to SSI and reversed DDS's award of benefits to him. (*Id.*)

The ALJ's conclusion that Workman committed "similar fault" is not supported by substantial evidence. For the ALJ to find that Workman committed similar fault under 20 C.F.R. § 416.1488(c), the ALJ must find that the "discrepancy" between Workman's statements about

---

[1] The other two bases for reopening are inapplicable because the initial determination was more than two years before the reopening. *See* 20 C.F.R. § 416.1488(a)-(b).

his work for Safeway was due to Workman "knowingly" making "incomplete or incorrect" statements or "knowingly conceal[ing] information." The ALJ did not make such a finding, and their conclusory restatement of the elements of similar fault do not support such a finding. (AR at 782.) Further, the ALJ's stray comment that the difference in Workman's statements about his work at Safeway was "self-serving," (AR at 796), is not evidence of or a finding that Workman's descriptions of his work at Safeway were "knowingly incomplete or incorrect."

Because the ALJ's reopening of the 2013 Application was an error of law and unsupported by substantial evidence, this court will reverse and remand for payment of benefits based on DDS's prior determination.

## IV. CONCLUSION

With respect to Workman's application for supplemental security income benefits filed on December 27, 2013, the court will reverse and remand for award of benefits. With respect to Workman's application for disability insurance benefits and supplemental security income benefits filed on December 20, 2007, the court will reverse and remand for further proceedings consistent with this opinion. The court will, therefore, GRANT in part and DENY in part Plaintiff's motion for judgment of reversal, or in the alternative, remand. Accordingly, the court will GRANT in part and DENY in part Defendant's motion for remand. A corresponding Order will issue separately.

Date: January 27, 2020

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge